# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

MOREY METAL INDUSTRIES INC.,

    Plaintiff,

v.

DONALD MCARTHY TRADING PTE LTD.,

    Defendant.

Civil Action No. 17-2182-BRM-TJB

**MEMORANDUM ORDER**

**THIS MATTER** was opened to the Court by Plaintiff Morey Metal Industries Inc. ("Morey Metal"), seeking the entry of a Default Judgment against Defendant Donald McArthy Trading PTE, Ltd. ("Donald McArthy"), pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons set forth below, Morey Metal's Motion for Default Judgment is **GRANTED**.

This dispute arises out of a Purchase Order under which Donald McArthy agreed to purchase, and Morey Metal agreed to sell, four specified metals of a specified weight at identified pricing per metric ton, subject to inspection-confirmed elements and expected chemistry, at approximately $1,006,400. (Compl. (ECF No. 1) ¶¶ 8-9.) Following the execution of the purchase order, Morey Metal commenced work towards fulfillment of the contract, including securing the goods needed, meeting with sampling and inspection agents, meeting with Donald McArthy's representative to inspect the commodities, and assembling portions of the commodities for delivery. (*Id.* ¶ 12.) After loading the first series of shipments, Morey Metal ran into difficulty in presenting the original documentation identified in the purchase order to Donald McArthy's bank in Singapore for sight-payment. (*Id.* ¶ 19.) Morey Metal advised Donald McArthy the sight-bank information provided by it did not include a clear identification of the "desk and/or person to whom

the original documentation for sight-payment should be addressed and requested that [Donald McArthy] provide those complete details." (*Id.* ¶ 20.) However, rather than provide the bank details requested, Donald McArthy offered instead to provide Morey Metal with an "advance" payment on the commodities shipped, in exchange for direct release of the original title documents for the cargo in transit. (*Id.* ¶ 22.)

After the cargo was in transit, Donald McArthy called into question Morey Metal's inspection report, but did not articulate any details regarding any claimed deficiencies or any proposals for possible cure or waiver of the alleged deficiencies. (*Id.* ¶ 23.) This raised the awareness of Donald McArthy's anticipatory breach. (*Id.* ¶ 24.) As such, Morey Metal was forced to

> consider that [Donald McArthy] no longer intended to accept the Cargo when delivered based on the revelation of a new "issue" with the agreed surveyor's inspection report, and might also seek to avoid payment of the remaining 20% balance identified in the Purchase Order in an effort to improperly renegotiate pricing and other terms.

(*Id.* ¶ 25.) After the indicia of anticipatory breach, Morey Metal received another communication from Donald McArthy again seeking to alter the terms of the transaction. (*Id.* ¶ 26.) Thereafter, Donald McArthy sent an email to Morey Metal stating, "I am taking my offer of 'copy' documents and documents-though-bank (known as CAD in USA) off the table. We will not remit an advance and we will not pay without holding the OBL in our hand." (*Id.* ¶ 28.)

As a result, Morey Metal sent Donald McArthy a notice reciting the material terms of the Purchase Order, under which Donald McCarthy was to organize tender of the sight-documents, and requesting more complete bank details. (*Id.* ¶ 29.) The letter also advised of Morey Metal's intent to "mitigate any losses as permitted under law without delay." (*Id.* ¶ 31.) Thereafter, a letter-

writing scuffle ensued between the parties to no avail. (*Id.* ¶ 32.) As such, Morey Metal engaged in mitigation efforts. (*Id.* ¶ 33.)

Eventually, Donald McArthy offered to proceed with the purchase order as originally agreed, but Morey Metal informed it of its mitigation rights and offered delivery of one of the four commodities then available, and to work toward incremental fulfilment of the balance of the purchase order in due course. (*Id.* ¶ 35.) Morey Metal then made the following proposal to Donald McArthy:

> For avoidance of any doubt by either party as to the Commodities' elemental weight and chemistry, we propose that the formal sampling and inspection reports associated with this Commodity be submitted for DMT's approval electronically first; and then, upon DMT's acceptance of the inspection reports, that 100% payment for the cargo is issued per shipment against electronic receipt of all shipping documents by your firm as DMT's lawful escrow agent, to be followed by immediate courier of any necessary originals at your direction.

(*Id.* ¶ 37.) Having received no reply, on March 27, 2017, Morey Metal advised Donald McArthy of the presumed cancellation of the Purchase Order. (*Id.* ¶ 38.) On March 30, 2017, Donald McArthy responded by declaring Morey Metal in breach of the Purchase Order. (*Id.* ¶ 39.)

Based on these facts, on March 31, 2017, Morey Metal filed a Complaint against Donald McArthy seeking declaratory judgment "that the contract is cancelled." (*Id.* ¶ 46.) On April 3, 2017, the Clerk of the Court issued summonses to Morey Metal. (ECF No. 4.) On April 28, 2017, Morey Metal retuned the executed summons. (ECF No. 5.) On May 10, 2017, Morey Metal requested a default due to Donald McArthy's failure to defend in this proceeding. (ECF No. 6.) On that same day, the Clerk entered Default. On May 11, 2017, Morey Metal filed a Motion for Default Judgment, "declaring the purchase order (DMC Purchase Order MMI-20161026-VOI)

between the parties is cancelled, in conformance with the demand set forth in [Morey Metal's] Complaint." (ECF No. 7.)

Following Morey Metal's Motion for Default Judgment, the Court requested Morey Metal provide it with information confirming Morey Metal properly served Donald McArthy in Singapore. (ECF No. 13.) On June 30, 2017, counsel for Morey Metal filed a letter articulating Singapore's law with regards to service of process upon a corporation. (*Id.*) Specifically, he indicated Singapore law requires service upon a corporation "shall be effected by leaving a copy of it and of the translation with the person to be served." (*Id.* at 1 (citing Singapore Sup. Ct. of Judicature Act, Rules of Ct., Chap. 332, Sect. 80, Order 65, R. 2(3).) Morey Metal's letter further demonstrated it acted consistently with Singapore law in serving Donald McArthy. (*Id.*) Morey McArthy

> retained the services of a local Singapore law firm and arranged for [Donald McArthy] to be personally served with a certified copy of the Summons, Complaint, Rule 7.1 Disclosure Statement, Case Information Statement, and Exhibits A through F of the Complaint . . . . [Donald McArthy] was personally served on April 18, 2017 at [] Singapore [], that being the address for [Donald McArthy's] registered with the Accounting & Corporate Regulatory Authority of Singapore.

(*Id.* at 2 (citing Singapore Notarial Certificate (ECF No. 6-2)).)

A default judgment may be entered "against a properly served defendant who fails to file a timely responsive pleading." *Louisiana Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. Pro. 55(b)(2); *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir.1990)). The judgment must be entered by the court, rather than the clerk, where the amount is not sum certain or cannot be made certain by computation. Fed. R. Civ. P. 55(b).

Entry of default judgment is within the discretion of the district court, although cases should "be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *see Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364. To determine the appropriateness of the entry of a default judgment, the Court may conduct a hearing when, "to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b).

Generally, courts treat all pleadings and allegations of the plaintiff as true on a motion for default judgment. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). However, the Court is not required to accept Plaintiff's conclusions of law and, therefore, "it remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action" against Defendants. *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A *Federal Practice and Procedure* § 2688, at 58-59, 63 (3d ed. 1998)); *accord Louisiana Counseling & Family Servs.*, 543 F. Supp. 2d at 364; *Comcast Cable Commc'ns v. Bowers*, No. CIV 06-1664 RBK, 2007 WL 1557510, at *2 (D.N.J. May 25, 2007).

Here, the Court finds service of the Summons and Complaint were properly effectuated with respect to Donald McArthy, default was duly noted by the Clerk of the Court against Donald McArthy for its failure to plead or otherwise defend in this action, and the unchallenged facts constitute a legitimate cause of action.

Accordingly, the Court having reviewed the papers, and for good cause shown,

**IT IS** on this 26th day of January 2018,

**ORDERED** that Morey Metal's Motion for Default Judgment is **GRANTED**. The Purchase (DMC Purchase Order MMI-20161026-VOI) between the parties is cancelled, in conformance with the demand set forth in Morey Metal's Complaint.

> */s/Brian R. Martinotti*
> **HON. BRIAN R. MARTINOTTI**
> **UNITED STATE DISTRICT JUDGE**